## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Scott Snyder and | : | |
| Nathen Velez, | : | |
| | : | |
| On Behalf of Themselves and | : | |
| All Others Similarly Situated | : | |
| Plaintiffs, | : | |
| c/o Lipson O'Shea Legal Group | : | |
| 700 West St. Clair Avenue #110 | : | |
| Cleveland, Ohio 44113 | : | |
| | : | |
| v. | : | Civil Action No: |
| | : | |
| NORFOLK SOUTHERN RAILWAY CO. | : | |
| c/o Statutory Agent | : | |
| Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, Ohio 43221 | : | |
| | : | |
| And | : | |
| | : | |
| NORFOLK SOUTHERN CORP. | : | |
| 650 w. Peachtree Street NW | : | |
| Atlanta, GA 30308 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs <u>Scott Snyder</u> and <u>Nathen & Nicole Velez</u> (collectively "Representative Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation. As used herein, Norfolk Southern refers to Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation. Plaintiffs by and through counsel allege as follows:

## STATEMENT OF THE CASE

1.      This is a class action on behalf of the Representative Plaintiffs and other persons similarly situated for claims arising from a train derailment transporting toxic chemicals comprised of contaminants and carcinogens that occurred on or about February 3, 2023 in East Palestine, Ohio (the "Derailment").

## VENUE AND JURISDICTION

2.      The Court has Federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The Defendants and the Plaintiff are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.

3.      This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332(d)(2) as this is a Class Action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the Representative Plaintiffs and Defendants have complete diversity of citizenship.

4.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the Representative Plaintiffs' causes of action occurred in or around East Palestine, Ohio.

5.      This Court has personal jurisdiction over Norfolk Southern, who transacts business in Ohio, caused tortious acts to occur in Ohio, and/or has the requisite contacts necessary to permit this Court to exercise jurisdiction.

## PARTIES

6.      Plaintiff Scott Snyder is a citizen and resident of East Palestine, Ohio with an address of 441 N. Market Street East Palestine, OH 44413. Plaintiff Snyder lives within 1 mile of the Train Derailment. As a direct and proximate result of the Train Derailment, Plaintiff Scott

Snyder's property was exposed to the dangerous and hazardous chemicals and aftereffects, and now faces economic loss as a result of the Train Derailment.

7.     Plaintiff Nathen Velez is a citizen and resident of East Palestine, Ohio with an address of 327 E. North Ave. East Palestine, OH 44413. Plaintiff Velez lives within 1 mile of the Train Derailment. As a direct and proximate result of the Train Derailment, Plaintiff Nathen Velez's property was exposed to the dangerous and hazardous chemicals and aftereffects, and now faces economic loss as a result of the Train Derailment.

8.     Defendant Norfolk Southern Railway Company is a Virginia corporation with its principal place of business in Norfolk, Virginia.

9.     Norfolk Southern Railway Company is a wholly owned subsidiary of Defendant Norfolk Southern Corporation.

10.     Norfolk Southern Corporation is a Virginia corporation with its principal place of business in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

11.     Between 1990 and 2021, there were a total of 54,570 derailments, for an average of 1,705 derailments a year.

12.     Norfolk Southern Corporation's subsidiary Norfolk Southern Railway Company operates approximately 19,300 route miles in twenty-two states and the District of Columbia, and serves every major container port in the eastern United States.[1]

13.     From 2019 through 2022, Norfolk Southern had 67 derailments in Ohio, which

---

[1] Norfolk Southern, About NS, Corporate Profile, http://www.nscorp.com/content/nscorp/en/about-ns/corporate-profile.html (last visited Feb. 20, 2023).

exceeds the amount of derailments in Ohio by every other railroad company.

14.     Norfolk Southern also exceeded other railroad companies in Pennsylvania with 74 derailments during that time span.

15.     In 2019, Norfolk Southern launched an "ambitious three-year strategic plan" referred to in the railroad industry as "precision scheduled railroading (PSR)."[2]

16.     Over a year ago, Norfolk Southern continued to implement its PSR by setting "goals that include creating longer trains, continuing productivity initiatives and finding growth opportunities."[3]

17.     The PSR raises safety concerns because jobs are eliminated and trains are longer. According to *VICE*, PSR has been good for shareholders; Norfolk Southern reported record profits from operations in 2022 at $4.8 billion. In March 2022, it announced a $10 billion stock buyback program.[4]

18.     Norfolk Southern was aware that there were different, safer braking mechanisms available for their trains including, Electronically Controlled Pneumatic (ECP). ECP brakes have the potential to reduce train stopping distances by up to sixty percent. However, Norfolk Southern prioritized profits over safety by utilizing outdated airbrakes instead of ECP brakes.

19.     From January 2022 through early May 2022, the Federal Railroad Administration performed an audit of Norfolk Southern. The findings of this audit included: undercounting and inadequately observing rules failures and a failure to be able to verify the number of operational

---

[2] Freight Waves, Norfolk Southern laying groundwork for longer trains, balanced network, https://www.freightwaves.com/news/norfolk-southern-laying-groundwork-for-longer-trains-balanced-network (Jan. 26, 2022) (last visited Feb. 20, 2023).
[3] *Id*.
[4] *Supra* n. 8.

tests performed.[5]

20.     This audit also found that Norfolk Southern management and employees alike generally lacked awareness of the company's Critical Incident Stress Plan.[6]

21.     Signalmen install, repair and maintain signal systems which railroads utilize to direct trains from stop to stop safely and on time.

22.     Around East Palestine, Norfolk Southern currently employs no signalmen who specialize in the maintenance of devices like hot-box detectors.

23.     Cutting of signalmen has led to hot-box detectors receiving less preventative maintenance, according to an official from the Brotherhood of Railroad Signalmen union.

24.     On or about February 3, 2023, Train 32N a 150-car Norfolk Southern freight train, spanning over a mile and a half, was traveling through Ohio while making its journey from Madison County, Illinois to Conway, Pennsylvania.

25.     Video of Train 32 taken in Salem, Ohio about twenty miles outside of East Palestine shows sparks and/or flames emanating from the train.

---

[5] U.S. Dept. of Transportation, FRA Audit Report of Norfolk Southern Railway Company, FRA Audit Number: 2022-NS Special Audit-01-1, at 7, 9-10, *available at* https://railroads.dot.gov/sites/fra.dot.gov/files/2022-11/Final%20Norfolk%20Southern%20Audit%20Report%202022%20%28003%29.pdf (July 8, 2022) (last visited Feb. 20, 2023).
[6] *Id*. at 12.



26.     Surveillance video from a residence showed what appears to be a wheel bearing in the final stage of overheating moments before the failure.[7]

27.     At approximately 8:55 P.M., Train 32N derailed in or around the vicinity of East Palestine, Ohio.

28.     At approximately 11:00 P.M. the area within a mile radius of the derailment was ordered to evacuate.

29.     On February 6, 2023 the evacuation radius was increased to a roughly one-mile by two-mile area pursuant to evacuation orders issued by the State of Ohio and the Commonwealth of Pennsylvania.

---

[7] *Id.*



**Governor Mike DeWine** ✔
@GovMikeDeWine

East Palestine: Residents living within a mile of the train derailment site who have not yet left their homes are asked to immediately evacuate due to the potential of a major explosion.

**EAST PALESTINE URGENT EVACUATION NOTICE**

(COLUMBUS, Ohio)—Following an evening briefing regarding the train derailment in East Palestine, Governor DeWine and Columbiana County officials are issuing an urgent warning to those living within a mile of the derailment. Within the last two hours, a drastic temperature change has taken place in a rail car, and there is now the potential of a catastrophic tanker failure which could cause an explosion with the potential of deadly shrapnel traveling up to a mile.

Although teams are working to prevent an explosion from happening, residents living within a mile of the site are advised to immediately leave the area. While most individuals in the one-mile radius have already evacuated, local officials say that more than 500 people have declined to leave their homes.

Those who have the means to leave are advised to immediately evacuate. Those who need help evacuating the area should call 330-426-4341. According to the Columbiana County Sheriff, those with children in their homes who decline to evacuate may be subject to arrest.

At approximately 8 p.m., Governor DeWine activated the Ohio National Guard to deploy to the scene to assist local authorities. The Ohio State Highway Patrol, Ohio Emergency Management Agency, and Ohio EPA are also assisting.

8:40 PM · Feb 5, 2023 · **671.7K** Views

30.     National Transportation Safety Board ("NTSB") investigators have identified and examined the railcar that initiated the derailment.[8]

31.     Upon information and belief, the same wheel bearing that was recorded on video 20 miles outside of East Palestine led to the derailment of Train 32N.

32.     The wheelset from the suspected railcar has been collected as evidence for metallurgical examination.[9]

33.     The suspected overheated wheel bearing has been collected and will be examined

---

[8] National Transportation Safety Board, News Releases, NTSB Issues Investigative Update on Ohio Train Derailment, available at https://www.ntsb.gov/news/press-releases/Pages/NR20230214.aspx (Feb. 14, 2023) (last visited Feb. 20, 2023).
[9] *Id.*

7

by engineers from the NTSB Materials Laboratory in Washington, D.C.[10]

34.   Train 32N was a 150-car freight, constituting over a mile-and-a-half in length. Approximately fifty of the railcars were derailed or damaged.  Eleven of the fifty cars involved in the derailment contained hazardous materials, including:

| Rail Car # | Hazardous Materials | Amount |
|---|---|---|
| TILX 402025 | Vinyl Chloride | 178,300 pounds |
| OCPX 80235 | Vinyl Chloride | 177,250 pounds |
| OCPX 80179 | Vinyl Chloride | 177,600 pounds |
| GATX 95098 | Vinyl Chloride | 178,150 pounds |
| OCPX 80370 | Vinyl Chloride | 176,100 pounds |
| SHPX 211226 | Ethylene Glycol Monobutyl Ether | 185,750 pounds |
| DOWX 73168 | Ethylhexyl Acrylate | 205,900 pounds |
| UTLX 205907 | Butyl Acrylate | 180,000 pounds |
| NATX 35844 | Isobutylene | 155,642 pounds |
| DPRX 259013 | Benzene | Residue |
| DPRX 258671 | Benzene | Residue |

35.   Train 32N was carrying over a million pounds of these chemicals.

---

[10] *Id.*

36.     Vinyl Chloride is a powerful cancer-causing gas. Public health bodies such as International Agency for Research on Cancer (IARC), U.S. Environmental Protection Agency (EPA) and National Toxicology Program (NTP) unanimously characterize vinyl chloride as a known human carcinogen. Vinyl chloride causes numerous forms of cancer, including rare forms of liver cancer.

37.      Vinyl Chloride has no safe level of exposure. A person exposed to Vinyl Chloride is at increased risk for cancer, specifically cancer of the liver.

38.     The wreckage of 32N continued to blaze for days. Vinyl Chloride is a highly volatile chemical. Continued exposure to heat and pressure can cause Vinyl Chloride to explode.



39.     The railcars containing hazardous chemicals were equipped with emergency valves to vent the contents and relieve pressure.

40.     On February 5, 2023, at least one of the release valves in a railcar containing Vinyl Chloride failed, further increasing pressure.

41.     On February 6, 2023, Norfolk Southern vented and burned over 1 million pounds

of Vinyl Chloride to avoid an explosion.

42.     The resultant smoke cloud carried up and away for miles.



43.     The area immediately south of the Site is a mixed-use commercial, industrial, and residential area. The area north of the Site is a commercial and industrial area, with additional residences to the northeast. The nearest residences are less than 1,000 feet from the derailment Site.

44.     The East Palestine Train Derailment Site is located within a mixed-use residential, commercial, and industrial area, with residential properties northwest, southeast, and south of the derailment area. Residential properties are also located along contaminated waterways which became contaminated after the derailment and are within the affected area. The Ohio

Pennsylvania border is located less than a mile from the derailment location.

45.     The nearest public well supply is located approximately one (1) mile from the derailment location. A ditch, located on the south side of the tracks, flows west for approximately 1,000 feet before it empties into Sulphur Run.  Sulphur Run runs into Leslie Run, Bull Creek, North Fork Little Beaver Creek, and Little Beaver Creek before ultimately emptying into the Ohio River. Wetlands and State Line Lake are located immediately adjacent to the Northeast of the Site. Segments of the affected waterways are considered to be habitat for the Eastern Hellbender, an endangered species of salamander.

46.     Releases to surface water occurred when liquid product exited railcars and when run-off from firefighting efforts at the derailment location flowed through a ditch to Sulphur Run and ultimately the Ohio River.

47.     Releases to soil occurred (1) when liquid product exited rail cars after the derailment (2) when run-off from firefighting efforts at the derailment location flowed from the right-of-way to adjoining property, and (3) when ash from the burns landed on soil. Local citizens observed smoke from the burns over the State of Ohio and the Commonwealth of Pennsylvania.

48.     The following are the hazardous materials involved in the derailment, substances detected in air, water, soil, and sediment samples, or combustion by-products of some of those chemicals at the Site, and the health/environmental effects associated with each:

a. **Vinyl Chloride**: Breathing high levels of vinyl chloride can cause dizziness or sleepiness. Breathing very high levels can cause fainting and breathing difficulty, and even higher levels can cause death. Studies show that chronic inhalation of vinyl chloride causes changes in the structure of the liver, and individuals who

breath high levels are more likely to experience these changes. Highly exposed workers have also developed liver cancer (angiosarcoma of the liver). The effects of ingesting high levels of vinyl chloride are unknown. Dermal exposure may cause numbness, redness, and blisters. Animal studies have shown that exposure to vinyl chloride during pregnancy can affect the growth and development of the fetus. Vinyl chloride is a known human carcinogen according to the Department of Health and Human Services (DHHS), the International Agency for Research or Cancer (IARC), and the EPA.

b. **Ethylene Glycol Monobutyl Ether**: Routes of exposure include ingestion and dermal contact. Inhaling Ethylene glycol monobutyl ether can irritate the nose and throat. It can also cause nausea, vomiting, diarrhea, and abdominal pain. Exposure can cause headache, dizziness, lightheadedness, and passing out. It may damage the liver and kidneys.

c. **Isobutylene**: Acute exposure to isobutylene is associated with the following health effects: irritation of eyes, nose, and throat, frostbite (from dermal contact), headache, dizziness, lightheadedness, and fatigue. Higher levels of isobutylene can cause coma and death. Chronic health hazards include cancer, reproductive harm, and other long term health effects.

d. **Benzene**: Breathing very high levels of benzene can result in death, while high levels can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Exposure through ingestion can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death. The major effect of benzene from chronic exposure is on the blood. Benzene

12

causes harmful effects on the bone marrow and can cause a decrease in red blood cells leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance of infection. Benzene may affect menstruation and decrease the size of ovaries in women following many months of exposure to high levels. Benzene is a known human carcinogen according to the Department of Health and Human Services, the International Agency for Research or Cancer (IARC), and the EPA.

e.  **Butyl Acrylate**: Butyl acrylate can cause health effects due to inhalation and through dermal contact. Contact with butyl acrylate can irritate the nose, throat, and lungs. Butyl acrylate may cause a skin allergy. Exposure to butyl acrylate can cause headache, dizziness, nausea, and vomiting. Repeated exposure can lead to permanent lung damage.

f.  **Phosgene**: Exposure to phosgene in the air can cause eye and throat irritation. High amounts in the air can cause severe lung damage. Exposure can occur through inhalation, dermal contact, or (less likely) ingestion. Higher levels of phosgene can cause lungs to swell, making it difficult to breathe. Even higher levels can result in severe lung damage that might lead to death. Dermal contact with phosgene can result in chemical burns or may cause frostbite.

g.  **Hydrogen Chloride**: Hydrogen chloride is irritating and corrosive to any tissue it contacts. Brief exposure to low levels causes throat irritation. Exposure to higher levels can result in rapid breathing, narrowing of the bronchioles, blue coloring of the skin, accumulation of fluid in the lungs, and even death. Exposure to even higher levels can cause swelling and spasm of the throat and suffocation. Some

people may develop an inflammatory reaction to hydrogen chloride. This condition is called reactive airways dysfunction syndrome (RADS), a type of asthma caused by some irritating or corrosive substances. Depending on the concentration, hydrogen chloride can produce conditions from mild irritation to severe burns of the eyes and skin. Long-term exposure to low levels can cause respiratory problems, eye and skin irritation, and discoloration of the teeth. Swallowing concentrated hydrochloric acid will cause severe corrosive injury to the lips, mouth, throat, esophagus, and stomach.

49.     Acrylate odors were noted by responders during indoor air monitoring.

50.     Acrylate odors along Sulphur Run, Leslie Run, Bull Creek, North Fork Little Beaver Creek, and Little Beaver Creek were noted by responders during sampling and containment activities.

51.     The estimated number of aquatic animals killed is approximately 3,500. Those aquatic animals were found in Sulphur Run, Leslie Run, Bull Creek, and a portion of the North Fork of Beaver Creek. Most of the fish appear to be small suckers, minnows, darters, and sculpin. Most of these deaths are believed to have been caused by the immediate release of contaminants into the water.

52.     Draining the railcars of Vinyl Chloride exposed the soil to this dangerous chemical. Vinyl Chloride is persistent in the environment and can therefore leach into groundwater.

53.     Releasing this amount of Vinyl Chloride into the environment is reckless.

54.     The decision by Norfolk Southern to vent and burn the Vinyl Chloride resulted in a creation of Vinyl Chloride byproducts, including Hydrogen Chloride and Phosgene.

55.     Both Hydrogen Chloride and Phosgene are incredibly dangerous and toxic to

14

human health. When Hydrogen Chloride combines with moisture it creates Hydrochloric Acid. The symptoms of Hydrochloric Acid exposure include eye, skin, and lung irritation. In extreme cases, exposure can be fatal.

56.     Norfolk Southern knew, or should have known, draining and burning Vinyl Chloride would expose the surrounding area to extremely toxic chemicals via the air, soil, and water.

57.     The evacuation order was lifted on February 8, 2023.

58.     Two days later the EPA sent a "General Notice of Potential Liability" letter to Norfolk Southern. In response to this Norfolk Southern provided the EPA with a manifest of the cars involved in the derailment.

59.     Upon information and belief, Norfolk Southern and its subcontractors have failed to remediate the site of the chemical spill, opting to cover the area in gravel rather than removal the soil.

60.     According to a *VICE* article entitled "**'32 Nasty:' Rail Workers Say They Knew the Train That Derailed in East Palestine Was Dangerous**," "two workers … said 32N in particular was a known safety risk."[11]

61.     These two workers told *VICE* that "multiple red flags, including two mechanical problems, about 32N went undetected or were ignored in the hours leading up to the crash."[12] According to the article, 32N has a nickname among some rail workers "for a reason."[13] They call this one "32 Nasty."[14]

---

[11] Vice, '32 Nasty:' Rail Workers Say They Knew the Train That Derailed in East Palestine Was Dangerous, available at https://www.vice.com/en/article/88qze4/32-nasty-rail-workers-say-they-knew-the-train-that-derailed-in-east-palestine-was-dangerous (Feb. 15, 2023) (last visited Feb. 20, 2023).
[12] *Id.*
[13] *Id.*
[14] *Id.*

## CLASS ACTION ALLEGATIONS

62.     Representative Plaintiffs bring this action on behalf of themselves and all others similarly situated. Representative Plaintiffs seek class certification defined as follows:

a.      **Property Damage Subclass:** All individuals and/or legal entities who on or about February 3, 2023 owned property in East Palestine, Ohio, and/or surrounding areas whose properties were contaminated by the derailment and subsequent chemical burn. This area could extend up to a 25-mile radius from the site of the derailment.

b.      **Economic Loss Subclass**: All individuals and/or legal entities who on or about February 3, 2023 resided in East Palestine, Ohio, and/or surrounding areas who lived in the evacuation zone, were forced to flee their property and had costs associated with this evacuation as a direct and proximate cause of Norfolk Southern's conduct. This class includes all individuals and/or legal entities who have lost work, productivity, revenue and/or economic opportunity due as a direct and proximate cause of Norfolk Southern's conduct. This area could extend up to a 25-mile radius from the site of the derailment.

63.     Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or subclassing following an opportunity to conduct discovery.

64.     **Fed. R. Civ. P. 23(a)(1):** The members of this Class are so numerous that joinder of all members is impractical. The exact number and identification of Class Members is presently unknown to Representative Plaintiffs. However, upon information and belief the Proposed Class will include thousands of residents of East Palestine, Ohio that have suffered, and continue to suffer injuries and damage caused by Norfolk Southern's actions.

65.     **Fed. R. Civ. P. 23(a)(2):** Common questions of law or fact exist to the Proposed Class and predominate over any questions affecting individual Class Members. These common

questions of law and fact include, but are not limited to:

a.      Whether Norfolk Southern operated their railroad enterprise negligently, recklessly, intentionally or otherwise tortiously;

b.      Whether Norfolk Southern owed a duty of care to Plaintiff and the Class;

c.      Whether Norfolk Southern breached this duty.

d.      Whether the duty of care owed to the Class included the duty to protect Plaintiff and the Class against unreasonable harm to their property through the emission of unsafe and unnecessarily high levels of toxic chemicals;

e.      Whether Norfolk Southern breached its duty to the Plaintiff and the Class by releasing chemicals originating from their chemical burn pit;

f.      Whether Norfolk Southern breached their duty to properly remediate the site of the derailment;

g.      Whether the property values of the members of the Class have been negatively impacted;

h.      Whether the Class Members have suffered loss of use and enjoyment of their property; and

i.      Whether Plaintiff and the Class are entitled to relief and the nature of that relief.

66.      **Fed. R. Civ. P. 23(a)(3):** The claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the Proposed Class.

c.       Representative Plaintiffs and the Proposed Class bring claims grounded in the same legal theories and involve the same or similar allegations.

d.      Representative Plaintiffs and the Proposed Class have suffered similar injuries as a direct and proximate cause of Norfolk Southern's actions.

17

e.      Representative Plaintiffs and the Proposed Class reside in East Palestine or in a 25-mile vicinity of the train derailment.

67.      **Fed. R. Civ. P. 23(a)(4):** Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. The Representative Plaintiffs' interests are aligned with the Proposed Class. Representative Plaintiffs have retained counsel who is nationally recognized in their competency and experience in complex class actions.

68.      **Fed. R. Civ. P. 23(b)(3):** Class action in this matter is superior to other available methods for fairly and efficiently adjudicate the controversy. Adjudication of this matter through Class Action ensures a just, speedy, and inexpensive determination. If individual Class members were instead to litigate the harms caused by Norfolk Southern, in addition to the undue exertion that would burden the Court system, the expense of litigating each case separately would be magnified well beyond the expense to litigate this case as a Class.

## COUNT I: NEGLIENCE

69.      Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

70.      At all relevant times, Norfolk Southern had a duty to exercise reasonable care to protect Representative Plaintiffs and Class Members from unreasonable harm caused by and through the operation of its railway and railcars.

71.      At all relevant times, Norfolk Southern had a duty to the Representative Plaintiffs and Class Members to exercise reasonable and ordinary care in the operation, inspection, maintenance, and repair of its railway.

72.      At all relevant times, Norfolk Southern had a duty to the Representative Plaintiffs and Class Members to exercise reasonable and ordinary care in the operation, inspection,

maintenance, and repair of its railcars.

73.    At all relevant times, Norfolk Southern had a duty to exercise reasonable and ordinary care in the transportation of toxic chemicals on their railways in its railcars.

74.    At all relevant times, Norfolk Southern had a duty to exercise reasonable and ordinary care in providing adequate instruction(s) and training to its employees.

75.    Norfolk Southern knew, or in the exercise of reasonable care should have known, that the operation of its railway and railcars was of such a nature that it was unreasonably dangerous to operate the railway and the railcars in the condition they were in.

76.    Norfolk Southern's duty is heightened because its railway and railcars were transporting toxic chemicals that included contaminants and carcinogens that are known to have deadly effects following exposure in any amount. Of the fifty (50) cars involved in the derailment, eleven (11) contained hazardous materials. These materials included:

f.    Vinyl Chloride in cars 28-31, 55;

g.    Ethylene Glycol Monobutyl in car 36;

h.    Ethylhexyl Acrylate in car 38;

i.    Isobutylene in car 49;

j.    Butyl Acrylates in car 50; and

k.    Benzene in cars 59 and 60.

77.    Norfolk Southern breached its duty to Representative Plaintiffs and Class Members in failing to operate, inspect, maintain, and repair its railway.

78.    Norfolk Southern breached its duty to Representative Plaintiffs and Class Members in failing to operate, inspect, maintain, and repair its railcars.

79.    Norfolk Southern breached its duty to Representative Plaintiffs and Class Members

in failing to exercise reasonable and ordinary care in the transportation of toxic chemicals on its railways and in its railcars by permitting this transport to occur on an unreasonably dangerous railway with defective or poorly maintained railcars.

80.     Norfolk Southern breached its duty to Representative Plaintiffs and Class Members in failing to exercise reasonable and ordinary care in providing adequate instruction(s) and training to its employees.

81.     As a direct and proximate cause of Norfolk Southern's conduct, Representative Plaintiffs and Class Members have suffered, and continue to suffer injuries including but not limited to compensatory damages to Representative Plaintiffs for past, present, and future damages, including but not limited to, lost wages, or income, property damage and diminution of value in property and loss of earning capacity.

## COUNT II: TRESPASS

82.      Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

83.     Norfolk Southern negligently caused or permitted ultrahazardous fumes, chemicals, carcinogens, and other toxic substances to be released into the atmosphere on or in the vicinity of the properties of Representative Plaintiffs and each Class Member.

84.     This emission of ultrahazardous fumes, chemicals, carcinogens and other toxic substances into the atmosphere on or in the vicinity of the properties of Representative Plaintiffs and each Class Member was an unlawful intrusion or invasion upon each respective property.

85.     Representative Plaintiffs and Class Members did not authorize such intrusion or invasion of their respective properties.

86.    As a direct and proximate cause of Norfolk Southern's trespass, Representative Plaintiffs and Class Members have been injured and sustained damages.

## COUNT III: STRICT LIABILITY

87.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

88.    Norfolk Southern engaged in an ultrahazardous activity.

89.    The transportation of highly toxic and combustible carcinogens is abnormally dangerous and cannot be made safe by the exercise of the utmost care. Furthermore, the ignition of a chemical burn pit is abnormally dangerous and cannot be made safe by the exercise of the utmost care. The ignition of a chemical burn pit resulted, and continues to result, in emissions highly toxic substances to surrounding communities, which pose a high degree of risk to Plaintiff and Class Members.

90.    The activities conducted by Norfolk Southern are exceedingly dangerous and offer little or no value to the surrounding community.

91.    As a result of Norfolk Southern's ultrahazardous activity, Norfolk Southern is strictly liable for any damages resulting therein.

92.    As a direct and proximate cause of Norfolk Southern's ultrahazardous activity, Representative Plaintiffs and Class Members have suffered, and continue to suffer, injury and damage.

## COUNT IV: ABSOLUTE AND QUALIFIED PRIVATE NUISANCE

93.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

94.    Norfolk Southern created and maintained a private nuisance by causing the

emission of ultrahazardous fumes, chemicals, carcinogens and other toxic substances into the atmosphere on or in the vicinity of the properties of Representative Plaintiffs and each Class Member.

95.     This emission constitutes an unreasonable and substantial interference in the use and enjoyment of each of the Representative Plaintiffs' and Class Members' property.

96.     This constitutes an absolute nuisance because Norfolk Southern was engaged in abnormally dangerous conduct, as described herein.

97.     This also constitutes a qualified nuisance because Norfolk Southern was engaged in negligent or reckless conduct, as described herein.

98.     The nuisance caused and continues to cause significant harm to the Representative Plaintiffs and the Class Members, including diminution in value of property and out-of-pocket expenses associated with the evacuation.

99.     This unreasonable and substantial interference is significant as the hazardous fumes, chemicals, carcinogens and other toxic substances that have encroached on Representative Plaintiffs' and Class Members' property are known to cause serious disease and/or cancer if exposed.

100.    This unreasonable and substantial interference is significant as the hazardous fumes, chemicals, carcinogens and other toxic substances that have encroached on Representative Plaintiffs' and Class Members' property are known to drive property values down.

101.    The properties of Representative Plaintiffs and Class Members have been exposed to these ultrahazardous fumes, chemicals, carcinogens and other toxic substances as a direct and proximate result of Norfolk Southern's actions.

102.    The property values of Representative Plaintiffs and Class Members have been negatively impacted as the direct and proximate result of Norfolk Southern's actions.

103.    The nuisance created by Norfolk Southern's conduct is abatable.

104.    The Representative Plaintiffs and Class Members request abatement of this nuisance.

105.    In the alternative, if the nuisance cannot be abated Representative Plaintiffs and Class Members request damages.

## COUNT V: ABSOLUTE AND QUALIFIED PUBLIC NUISANCE

106.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

107.    Norfolk Southern created a public nuisance by allowing the emission of ultrahazardous fumes, chemicals, carcinogens and other toxic substances into the atmosphere on or in the vicinity of the properties of Representative Plaintiffs and each Class Member.

108.    The emission constitutes an unreasonable and substantial interference with the rights common to the general public, public water ways, drinking water, and  the public health.

109.    This constitutes an absolute nuisance because Norfolk Southern was engaged in abnormally dangerous conduct, as described herein.

110.    This also constitutes a qualified nuisance because Norfolk Southern was engaged in negligent or reckless conduct, as described herein.

111.    The nuisance caused and continues to cause significant harm to the Representative Plaintiffs and the Class Members, including diminution in value of property and out-of-pocket expenses associated with the evacuation.

112.    This unreasonable and substantial interference is significant as the hazardous

fumes, chemicals, carcinogens and other toxic substances that have encroached on Representative Plaintiffs' and Class Members' property are known to cause serious diminution of property values.

113.    The properties of Representative Plaintiffs and Class Members have been exposed to these ultrahazardous fumes, chemicals, carcinogens and other toxic substances as a direct and proximate cause of Norfolk Southern's actions.

114.    The Representative Plaintiffs and Class Members have suffered particularized harm.

115.    The property values of Representative Plaintiffs and Class Members have been negatively impacted as the direct and proximate result of Norfolk Southern's actions.

116.    The nuisance created by Norfolk Southern's conduct is abatable.

117.    The Representative Plaintiffs and Class Members request abatement of this nuisance.

118.    In the alternative, if the nuisance cannot be abated Representative Plaintiffs and Class Members request damages.

## COUNT VII: NEGLIGENCE PER SE

119.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

120.    Norfolk Southern had an obligation to comply with 49 CFR § 217 Railroad Operating Rules.

121.    Upon information and belief, Norfolk Southern failed to comply with 49 CFR § 217.

122.    Norfolk Southern's continued failure to comply with 49 CFR § 217 resulted in

Train 32N's derailment.

123.    This failure to comply to 49 CFR § 217 constitutes negligence per se.

124.    Norfolk Southern's actions were in violation of law and in a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm thereby subjecting Norfolk Southern to liability for punitive damages.

**COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

125.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

126.    At all times herein, Norfolk Southern's negligent and/or outrageous conduct constituted an unlawful interference with personal and property rights of the Representative Plaintiffs and members of the Putative Class. As a direct and proximate result of Norfolk Southern's conduct, as alleged herein, Representative Plaintiffs and members of the Putative Class have suffered severe emotional distress, the effect of which continues until the present and will persist into the future, including, but not limited to, anxiety over damage to their property and evacuation from their homes.

127.    This serious emotional distress was a foreseeable injury to the Representative Plaintiffs and members of the Putative Class.

128.    In addition, Norfolk Southern's actions were in violation of law and in a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm thereby subjecting Norfolk Southern to liability for punitive damages

**COUNT IX:  CERCLA CLAIMS**

129.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

130.    Pursuant to Section 107(a)(4)(B) of CERCLA any person may sue to recover "any other necessary costs of response" that person has incurred.

131.    Norfolk Southern was transporting hazard substances as defined by Section 101(14) of CERCLA, 42 U.S.C.A. § 9601.

132.    As a result of the derailment Norfolk Southern is liable to Plaintiffs for any necessary costs incurred by them under 107(a)(4)(B) of CERCLA.

## COUNT X: PUNITIVE DAMAGES

133.    Representative Plaintiffs re-allege and incorporate by reference each and every paragraph set forth in this Complaint as though fully set forth herein.

134.    Norfolk Southern knew, or should have known, that its conduct was negligent and with such conscious disregard for Representative Plaintiffs and Class Members.

135.    Norfolk Southern acted with extreme reckless behavior and a conscious disregard for the Representative Plaintiffs and Class Member in the operation, inspection, and maintenance of its railway and railcars.

136.    Norfolk Southern's egregious conduct caused significant injury and damages to Representative Plaintiffs and Class Members.

137.    Norfolk Southern's egregious conduct consists of such flagrant disregard as to constitute malice.

## PRAYER FOR RELIEF

**WHEREFORE**, Representative Plaintiffs respectfully request judgment in their favor against Defendants, and each of them, individually, jointly and severally, and Plaintiff requests compensatory damages, in a sum to confer jurisdiction upon this Court, together with interest on that amount at the legal rate from the date of judgment until paid, costs of suit, attorneys' fees, and

all such other relief as this Court deems just and proper, as well as:

l.  Compensatory damages to Plaintiff for past, present, and future damages, including but not limited to, diminution of property values, mental anguish related to anxiety over property valuation by Representative Plaintiffs and Class Members, lost wages, or income, and loss of earning capacity, together with interest and costs as provided by law;

m.  Restitution and disgorgement of profits;

n.  Punitive damages;

o.  Reasonable attorneys' fees;

p.  The costs of these proceedings;

q.  All ascertainable economic damages;

r.  Loss of use of their property;

s.  Loss of enjoyment of property;

t.  Contamination and loss of value to their property;

u.  Other damages that will be shown at trial following discovery and adjudication of this matter;

v.  Class Certification;

w.  Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Representative Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: February 22, 2023

Plaintiffs,
By their Attorney:

/s/ Michael J. O'Shea
Michael J. O'Shea
**Lipson O'Shea Legal Group**
Hoyt Block Building  - Suite 110
700 West St. Clair Avenue
Cleveland, Ohio 44113
(216) 241-0011 - office
(216) 470-8098 - cell
(440) 331-5401 - fax
michael@moshea.com
www.lipsonoshea.com


Vincent L. Greene (application for *pro hac vice* admission to be filed)
Jonathan D. Orent (application for *pro hac vice* admission to be filed)
Dennis A. Costigan (application for *pro hac vice* admission to be filed)
MOTLEY RICE LLC
40 Westminster St., 5th Fl,
Providence, RI 02903
401-457-7700
401-457-7708 Fax